Jeannette S. v Williot (2020 NY Slip Op 00743)





Jeannette S. v Williot


2020 NY Slip Op 00743


Decided on January 31, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 31, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, DEJOSEPH, AND CURRAN, JJ.


964 CA 18-02306

[*1]JEANNETTE S., AS PARENT AND NATURAL GUARDIAN OF BRANDON K.S., PLAINTIFF-APPELLANT,
v
PIERRE E. WILLIOT, M.D., SAUL P. GREENFIELD, M.D., PEDIATRIC UROLOGY OF WESTERN NEW YORK, P.C., AND KALEIDA HEALTH, DOING BUSINESS AS WOMEN & CHILDREN'S HOSPITAL OF BUFFALO, DEFENDANTS-RESPONDENTS. 






BROWN CHIARI LLP, BUFFALO (MICHAEL R. DRUMM OF COUNSEL), FOR PLAINTIFF-APPELLANT.
GIBSON, MCASKILL & CROSBY, LLP, BUFFALO (MICHAEL J. WILLETT OF COUNSEL), FOR DEFENDANTS-RESPONDENTS PIERRE E. WILLIOT, M.D., SAUL P. GREENFIELD, M.D. AND PEDIATRIC UROLOGY OF WESTERN NEW YORK, P.C.
CONNORS LLP, BUFFALO (MOLLIE C. MCGORRY OF COUNSEL), FOR DEFENDANT-RESPONDENT KALEIDA HEALTH, DOING BUSINESS AS WOMEN & 


 Appeal from an order of the Supreme Court, Erie County (Henry J. Nowak, Jr., J., for Donna M. Siwek, J.), entered May 17, 2018. The order, inter alia, granted the motions of defendants for summary judgment. 
It is hereby ORDERED that the order so appealed from is modified on the law by denying the motions for summary judgment of defendants Saul P. Greenfield, M.D., Pediatric Urology of Western New York, P.C., and Kaleida Health, doing business as Women & Children's Hospital of Buffalo, and reinstating the complaint against those defendants, and as modified the order is affirmed without costs.
Memorandum: In this medical malpractice action arising from allegations that defendants were negligent in providing medical care to plaintiff's son, plaintiff appeals from an order that, insofar as appealed from, granted the respective motions of defendants Saul P. Greenfield, M.D. and Pediatric Urology of Western New York, P.C. (collectively, Pediatric Urology defendants) and defendant Kaleida Health, doing business as Women & Children's Hospital of Buffalo (Kaleida Health) for summary judgment dismissing the complaint against them; granted the motions of defendant Pierre E. Williot, M.D. and the Pediatric Urology defendants and Kaleida Health to strike plaintiff's supplemental bills of particulars; and denied plaintiff's cross motion for an order directing defendants to accept her supplemental bills of particulars or, alternatively, granting leave to amend the bills of particulars.
Contrary to plaintiff's contention, we conclude that Supreme Court properly granted the respective motions of Williot and the Pediatric Urology defendants and Kaleida Health to strike plaintiff's "supplemental" bills of particulars. A supplemental bill of particulars is appropriate "[w]here the plaintiff[] seek[s] to allege continuing consequences of the injuries suffered and described in previous bills of particulars, rather than new and unrelated injuries" (Sisemore v Leffler, 125 AD3d 1374, 1375 [4th Dept 2015] [internal quotation marks omitted]; see Kellerson v Asis, 81 AD3d 1437, 1438 [4th Dept 2011]). Where, however, the plaintiff alleges a new injury, it is not a supplemental bill of particulars but an amended bill of particulars (see Jurkowski v Sheehan Mem. Hosp., 85 AD3d 1672, 1673-1674 [4th Dept 2011]; see generally [*2]CPLR 3043 [b]). Here, the documents that plaintiff labeled "supplemental" bills of particulars were actually amended bills of particulars because they listed a new injury, i.e., hypovolemic shock. Thus, we conclude that the court properly granted the motions to strike plaintiff's "supplemental" bills of particulars inasmuch as they were actually amended bills of particulars. We further conclude that the amended bills of particulars are "a nullity" inasmuch as the note of issue had been filed and plaintiff failed to seek leave to serve amended bills of particulars before serving them upon defendants (Jurkowski, 85 AD3d at 1674; cf. CPLR 3042 [b]; see generally Stewart v Dunkleman, 128 AD3d 1338, 1339-1340 [4th Dept 2015], lv denied 26 NY3d 902 [2015]).
Contrary to plaintiff's further contention, the court properly denied plaintiff's cross motion to the extent that she sought leave to serve the amended bills of particulars. " Leave to serve an amended bill of particulars should not be granted where a [note of issue] has been filed, except upon a showing of special and extraordinary circumstances' " (Stewart, 128 AD3d at 1339; see Glionna v Kubota, Ltd., 154 AD2d 920, 920 [4th Dept 1989]). Here, plaintiff failed to allege any special and extraordinary circumstances that would permit her to amend her bills of particulars (see Stewart, 128 AD3d at 1339-1340).
We also reject plaintiff's contention that Kaleida Health's motion for summary judgment was untimely. Kaleida Health complied with the court-ordered deadline for the filing of summary judgment motions (see CPLR 3212 [a]; see generally Brill v City of New York, 2 NY3d 648, 652 [2004]).
We agree with plaintiff, however, that the court erred in granting Kaleida Health's and the Pediatric Urology defendants' motions for summary judgment dismissing the complaint against them, and we therefore modify the order accordingly. On a motion for summary judgment in a medical malpractice action, " a defendant has the burden of establishing, prima facie, that he or she did not deviate from good and accepted standards of . . . care, or that any such deviation was not a proximate cause of the plaintiff's injuries' " (Culver v Simko, 170 AD3d 1599, 1600 [4th Dept 2019]). Even assuming, arguendo, that Kaleida Health addressed both deviation and causation in its motion for summary judgment and met its initial burden by submitting its expert's affidavit, we conclude that plaintiff raised triable issues of fact in opposition (see generally id.). Specifically, plaintiff submitted the affirmation of her expert, who opined that Kaleida Health breached the applicable standard of care by "mis-triaging" plaintiff's son, which led to a delay in medical treatment. Plaintiff's expert opined that the symptoms and vital signs exhibited by plaintiff's son required him to be seen by a physician and started on intravenous hydration immediately upon his arrival at the emergency room. The expert further opined that Kaleida Health's deviation from the standard of care was a proximate cause of the injuries to plaintiff's son (see Kless v Paul T.S. Lee, M.D., P.C., 19 AD3d 1083, 1084 [4th Dept 2005]). Thus, the affidavits submitted by Kaleida Health and plaintiff presented a "classic battle of the experts" precluding summary judgment (Mason v Adhikary, 159 AD3d 1438, 1439 [4th Dept 2018] [internal quotation marks omitted]).
Contrary to the dissent's conclusion, plaintiff did not rely on "a new theor[y] of liability" (Walker v Caruana, 175 AD3d 1807, 1807 [4th Dept 2019]; see DeMartino v Kronhaus, 158 AD3d 1286, 1286-1287 [4th Dept 2018]) in opposing Kaleida's motion. Rather, plaintiff's theory of liability, as alleged in the bill of particulars to Kaleida Health, has consistently been that Kaleida Health was negligent in failing to properly and timely triage and treat her son (see Contreras v Adeyemi, 102 AD3d 720, 722 [2d Dept 2013]). The injury mentioned in Kaleida Health's records of the triage of plaintiff's son, i.e., "septic shock," was merely mimicked by plaintiff in her bill of particulars. Plaintiff's expert, and the experts of the Pediatric Urology defendants, however, opined that plaintiff's son was not experiencing septic shock, but was actually suffering from hypovolemic shock. Under these circumstances, the change in the precise nature of the harm actually suffered by plaintiff's son does not change the underlying theory of liability, i.e., Kaleida Health's negligence and malpractice in triaging plaintiff's son (see id.).
With respect to the Pediatric Urology defendants' motion for summary judgment, we conclude that they failed to meet their " initial burden of establishing the absence [on their part] of any departure from good and accepted medical practice or that . . . plaintiff['s son] was not injured thereby' " (Groff v Kaleida Health, 161 AD3d 1518, 1521 [4th Dept 2018]). Here, the Pediatric Urology defendants submitted an affidavit from an expert in pediatric infectious [*3]diseases and an affirmation from an expert in urology. Both experts averred that Greenfield's role in the care of plaintiff's son was limited to a single phone call on Saturday, June 27, 2009. Both experts failed to address plaintiff's testimony that she called and spoke with Greenfield on two separate occasions over the course of the weekend of June 27-28, 2009, with the second phone call necessitated by the fact that the son's "symptoms were not resolving." Thus, the experts failed to "assume the truth of the plaintiff's testimony" (Ebbole v Nagy, 169 AD3d 1461, 1462 [4th Dept 2019]), and therefore the experts' affidavit and affirmation do not meet the Pediatric Urology defendants' burden on their motion of eliminating all material issues of fact (see id.). The Pediatric Urology defendants' "[f]ailure to make such a [prima facie] showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
All concur except Smith, J.P., and Peradotto, J., who dissent in part and vote to affirm in the following memorandum: We agree with the majority that Supreme Court properly granted the motions to strike plaintiff's "supplemental" bills of particulars. We also agree with the majority that the summary judgment motion of defendant Kaleida Health, doing business as Women & Children's Hospital of Buffalo (Kaleida Health), was not untimely. We respectfully disagree, however, with the majority's conclusions that the court erred in granting the motion of Saul P. Greenfield, M.D. and Pediatric Urology of Western New York, P.C. (collectively, Pediatric Urology defendants), and the motion of Kaleida Health, both of which sought summary judgment dismissing the complaint against the respective movants. We therefore dissent in part and vote to affirm the order in its entirety.
The majority concludes that, assuming, arguendo, that Kaleida Health met its initial burden on its motion, plaintiff raised triable issues of fact in opposition by submitting an expert's opinion that Kaleida Health deviated from the standard of care by misdiagnosing plaintiff's son, because his symptoms and vital signs required him to be seen by a physician and started on intravenous hydration immediately upon his arrival at the emergency room. Plaintiff's expert based that opinion on his conclusions that, when plaintiff's son arrived at the hospital, he had an "elevated heart rate, elevated respiratory rate, low blood pressure, altered mental status ( tipsy'), a history of fever, and a rash on his feet and legs."
"It is well settled that, where an expert's ultimate assertions are speculative or unsupported by any evidentiary foundation, . . . [his or her] opinion should be given no probative force and is insufficient to withstand a motion for summary judgment" (Golden v Pavlov-Shapiro, 138 AD3d 1406, 1406 [4th Dept 2016], lv denied 28 NY3d 913 [2017] [internal quotation marks omitted]; see Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]). Here, there is no indication in the record that plaintiff's son had low blood pressure when he arrived at the emergency room, his respiration rate was normal at that time, the triage nurse did not indicate that she observed any rash, nor did she indicate that plaintiff's son was tipsy or otherwise exhibited an altered mental state. Finally, the central complaint upon the arrival of plaintiff's son at the hospital was a fever, but his temperature was normal at that time, and the expert provided no explanation why a history of fever would impact his diagnosis if the patient's temperature was normal at the time of triage. Thus, we conclude that " the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation, . . . [and therefore his] opinion should be given no probative force and is insufficient to withstand summary judgment' " (Wilk v James, 108 AD3d 1140, 1143 [4th Dept 2013], quoting Diaz, 99 NY2d at 544; see Hope A.L. v Unity Hospital of Rochester, 173 AD3d 1713, 1715 [4th Dept 2019]). Inasmuch as we agree with the majority's tacit conclusion that Kaleida Health met its initial burden on the motion (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]), we conclude that the court properly granted the motion of Kaleida Health for summary judgment dismissing the complaint against it.
The majority also concludes that the court erred in granting the motion of the Pediatric Urology defendants for summary judgment dismissing the complaint against them. Plaintiff testified at her deposition and averred in an affidavit that she spoke on the telephone with Greenfield twice to seek advice because she was increasingly concerned about her son's condition. The majority concludes that the Pediatric Urology defendants failed to meet their initial burden on the motion because their experts failed to address plaintiff's second telephone call with Greenfield. We disagree.
We conclude that the Pediatric Urology defendants met their burden on their motion by submitting the opinions of two medical experts establishing that Greenfield acted in accordance with the standard of care based on the information that plaintiff provided in her telephone calls (see generally Alvarez, 68 NY2d at 324). Even assuming, arguendo, that plaintiff submitted sufficient information to raise a triable issue of fact whether she spoke with Greenfield twice on the weekend in question, we conclude that she failed to raise a triable issue of fact whether during the second call she provided any additional information concerning her son's condition, and thus she failed to raise a triable issue of fact whether the Pediatric Urology defendants deviated from the standard of care by failing to act on information received during the second call (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Furthermore, the Pediatric Urology defendants also met their initial burden with respect to the issue of causation by establishing that the care and treatment that Greenfield provided was not a cause of the injuries sustained by plaintiff's son (see generally Nestorowich v Ricotta, 97 NY2d 393, 398 [2002]). In response, plaintiff's expert opined only that, if plaintiff's son had been taken to an emergency room earlier, he "would have had an even greater opportunity for successful diagnosis and treatment." Inasmuch as the expert's "submissions provide no explanation to support the claim that the alleged delay in [referring plaintiff's son to an emergency room] contributed to the injuries sustained" (Nowelle B. v Hamilton Med., Inc., 177 AD3d 1256, 1257 [4th Dept 2019]), we conclude that the "affirmation is conclusory in nature and lacks any details and thus is insufficient to raise the existence of a triable factual issue concerning medical malpractice" (Hudson v Slough, 55 AD3d 1358, 1358 [4th Dept 2008] [internal quotation marks omitted]; see Lake v Kaleida Health, 59 AD3d 966, 966-967 [4th Dept 2009]).
More fundamentally, plaintiff's expert's opinions on malpractice and causation cannot create a question of fact because they are based on a new condition and new injury. Plaintiff's expert opined that: plaintiff's son developed Henoch-Schonlein Purpura (HSP) in the days before presenting to the emergency room and was suffering from HSP when he presented to the emergency room; plaintiff's son was misdiagnosed and the correct diagnosis was HSP; as a result of the mistriage, plaintiff's son went into hypovolemic shock; and, if properly triaged, plaintiff's son's condition, i.e., HSP, never would have progressed to hypovolemic shock.
Plaintiff's expert's opinion regarding failure to triage and diagnose relates to a new condition, HSP, and his opinion on proximate cause relates to a new injury, hypovolemic shock, neither of which were included in plaintiff's original bill of particulars and both of which were included in the "supplemental" bills of particulars, which this Court unanimously agrees were properly struck. Inasmuch as plaintiff's expert's opinions regarding the defendants' negligence and proximate cause involve a new condition and new injury not included in plaintiff's original bill of particulars, they constituted a new theory of recovery and thus could not be used to defeat the defendants' motions (see Walker v Caruana, 175 AD3d 1807, 1807-1808 [4th Dept 2019]; DeMartino v Kronhaus, 158 AD3d 1286, 1287 [4th Dept 2018]).
Entered: January 31, 2020
Mark W. Bennett
Clerk of the Court